## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

**MELISSA CHINERY**,               )
                                   )
    Plaintiff,             )
                                   )
v.                                 )          Civil Action No. 16-02697-ER
                                   )
**AMERICAN AIRLINES,**             )
                                   )
    Defendant.             )
_____)

## DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Daniel E. Farrington (*pro hac vice*)
Sarah K. Biran (*pro hac vice*)
The Farrington Law Firm, LLC
7501 Wisconsin Avenue, Suite 1220W
Bethesda, MD 20814
Tel. (301) 951-1538
Fax (301) 880-5031
dfarrington@farringtonlaw.com

*Counsel for Defendant*

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................ 1

II.   STATEMENT OF UNDISPUTED FACTS ................................................ 2

    A.    ALLEGED HARASSMENT DURING THE UNION ELECTION CAMPAIGN . 3

    B.    CHINERY'S COMPLAINTS OF HARASSMENT ................................ 4

    C.    CHINERY'S ALLEGATIONS OF RETALIATION ............................ 5

III.  LEGAL ANALYSIS ......................................................................... 6

    A.    LEGAL STANDARD FOR A MOTION FOR SUMMARY JUDGMENT. ......... 7

    B.    CHINERY FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES
        ON HER STATE LAW CLAIMS AND HER STATE AND FEDERAL
        DISPARATE TREATMENT AND RETALIATION CLAIMS. ............................ 8

    C.    AMERICAN AIRLINES IS ENTITLED TO SUMMARY JUDGMENT ON
        CHINERY'S HOSTILE WORK ENVIRONMENT CLAIMS. .......................... 12

        1.    Chinery Does Not Allege Workplace Harassment. .................................... 12

        2.    Chinery did Not Suffer Intentional Discrimination Because of her Sex. .... 13

        3.    The Alleged Harassment Was Not Severe or Pervasive. ........................... 15

    D.    AMERICAN AIRLINES IS ENTITLED TO SUMMARY JUDGMENT ON
        CHINERY'S DISPARATE TREATMENT AND RETALIATION CLAIMS. ..... 18

        1.    Chinery did Not Suffer an Adverse Employment Action. ......................... 19

        2.    Chinery Cannot Show Circumstances Giving Rise to an Inference of
            Discrimination or Demonstrate a Causal Nexus Between Protected
            Activity and an Adverse Employment Action. .......................................... 21

IV.   CONCLUSION ................................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

Adefumi v. City of Phila. Free Library, No. Civ. A. 01-5565, 2003 WL 21956417
  (E.D. Pa. July 17, 2003)................................................................................. 16

Alers v. City of Phila., 919 F. Supp. 2d 528 (E.D. Pa. 2013) ...................................... 21

Ambrose v. Twp. of Robinson, 303 F.3d 488 (3d Cir. 2002).................................... 22

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) .................................................. 7

Boykins v. SEPTA, No. CV 16-985, 2017 WL 1355036 (E.D. Pa. Apr. 13, 2017).................... 21

Brzozowski v. Pa. Tpk. Comm'n, 165 F. Supp. 3d 251 (E.D. Pa. 2016) .................................... 12

Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006) ................................ 19

Burton v. Teleflex Inc., 707 F.3d 417 (3d Cir. 2013) ............................................. 18, 19

Cardenas v. Massey, 269 F.3d 251 (3d Cir. 2001) ....................................................... 19

Cassandra Ballard-Carter v. The Vanguard Group, No. 16-3382, 2017 WL 3411867
  (3d Cir. Aug. 9, 2017)................................................................................. 16

Castleberry v. STI Grp., 863 F.3d 259 (3d Cir. 2017)................................................... 15

Caver v. City of Trenton, 420 F.3d 243 (3d Cir. 2005) ........................................ 15, 17

Celotex v. Catrett, 477 U.S. 317 (1986) ............................................................... 8

Clair v. Agusta Aerospace Corp., 592 F. Supp. 2d 812 (E.D. Pa. 2009)..................................... 16

Crawford v. Verizon Pa., Inc., 103 F. Supp. 3d 597 (E.D. Pa. 2015).................................... 11

Cronin v. Martindale Andres & Co., 159 F. Supp. 2d 1 (E.D. Pa. 2001) ..................................... 17

Dalzell v. Astrue, No. 2:05cv755, 2008 WL 598307 (W.D. Pa. Mar. 3, 2008) .......................... 11

Davis v. Se. Pa. Transp. Auth., No. CV 13-6864, 2016 WL 97922 (E.D. Pa. Jan. 8, 2016)........ 14

Davis v. Solid Waste Servs., Inc., 20 F. Supp. 3d 519 (E.D. Pa. 2014) ................................ 15, 17

Deans v. Kennedy House, Inc., 998 F. Supp. 2d 393 (E.D. Pa. 2014) ........................................ 20

DeJohn v. Tippmann Group/Interstate Warehousing, Inc., No. 1:05cv591, 2008
  WL 2230194 (S.D. Ohio May 29, 2008) ................................................................ 20

Dole v. Town of Bethlehem, No. 1:16-CV-0173 (DJS), 2017 WL 1483451
  (N.D.N.Y. Apr. 25, 2017)................................................................................. 12

Durham Life Ins. Co. v. Evans, 166 F.3d 139 (3d Cir. 1999) ........................................ 19

Ellis v. Pa. Dep't of Corr., Civil No. 1:CV-15-2329, 2017 WL 1928342
  (M.D. Pa. May 10, 2017) .................................................................................. 20

Faragher v. City of Boca Raton, 524 U.S. 775 (1998)........................................ 15, 18

Flora v. Wyndcroft Sch., No. CIV.A. 12-6455, 2013 WL 664194 (E.D. Pa. Feb. 25, 2013)....... 10

Frazier v. Henry H. Ottens Mfg. Co., No. CIV.A. 11-3987, 2012 WL 1137051
(E.D. Pa. Apr. 5, 2012) ................................................................................. 17

Fusco v. Bucks Cty., No. CIV.A. 08-2082, 2009 WL 4911938
(E.D. Pa. Dec. 18, 2009) ..................................................................... 8, 16, 23

Gans v. Mundy, 762 F.2d 338 (3d Cir. 1985).................................................... 7

Garner v. Phila. Hous. Auth., No. CV 15-183, 2016 WL 4430639 (E.D. Pa. Aug. 22, 2016)..... 17

Gillyard v. Geithner, 81 F. Supp. 3d 437 (E.D. Pa. 2015)............................................. 22

Graudins v. Retro Fitness, LLC, 921 F. Supp. 2d 456 (E.D. Pa. 2013)........................................ 9

Greer v. Mondelez Glob., Inc., 590 F. App'x 170 (3d Cir. 2014) ................................. 16

Harris v. Forklift Sys., Inc., 510 U.S. 17 (1993)..................................................... 12

Hildebrand v. Allegheny Cnty., 757 F.3d 99 (3d Cir. 2014) ........................................ 8

Hughes v. Allegheny Cty. Airport Auth., No. CV 15-221, 2017 WL 2880875
(W.D. Pa. July 6, 2017) ............................................................................. 20

Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100 (3d Cir. 2009) ........................ 12

In re Actiq Sales & Mktg. Practices Litig., 790 F. Supp. 2d 313 (E.D. Pa. 2011) ........................ 8

Johnson v. Phila. Hous. Auth., 218 F. Supp. 3d 424 (E.D. Pa. 2016) ........................................ 23

Jones v. Se. Pa. Transp. Auth., 796 F.3d 323, 326 (3d Cir. 2015).............................................. 20

Lamb v. Montgomery Twp., No. CV 15-6759, 2016 WL 7426125 (E.D. Pa. Dec. 23, 2016)..... 17

Liberty Mut. Ins. Co. v. Sweeney, 689 F.3d 288 (3d Cir. 2012) ..................................... 7

Lotocky v. Elmira City Sch. Dist., 149 F. Supp. 3d 429 (W.D.N.Y. 2015) ................................. 20

Mandel v. M & Q Packaging Corp., 706 F.3d 157 (3d Cir. 2013) ................................ 8, 9, 10, 11

McCloud v. United Parcel Serv., Inc., 543 F. Supp. 2d 391 (E.D. Pa. 2008)............................. 23

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) ........................................ 18

Med. Protective Co. v. Watkins, 198 F.3d 100 (3d Cir. 1999)..................................... 7

Moore v. City of Phila., 461 F.3d 331 (3d Cir. 2006) ......................................... 18, 19

Morris v. United Steel Workers of Am. Local 4889, No. Civ. A. 08-3398, 2010
WL 933807 (E.D. Pa. Mar. 16, 2010)........................................................... 21

Morrison v. Thomas Jefferson Univ. Hosp., No. CIV.A. 10-4365, 2011 WL 4018252
(E.D. Pa. Sept. 8, 2011) ............................................................................. 21

Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002) ................................. 10, 18

Ness v. Marshall, 660 F.2d 517 (3d Cir. 1981)..................................................... 7

Omnipoint Commc'ns Enters., L.P. v. Newtown Twp., 219 F.3d 240 (3d Cir. 2000).................. 8

Pourkay v. City of Phila., No. Civ. A. 06-5539, 2009 WL 1795814 (E.D. Pa. June 23, 2009) ... 10

Reyes v. McDonald Pontiac GMC Truck, Inc., 997 F. Supp. 614 (D.N.J. 1998) ....................... 14

Saidu–Kamara v. Parkway Corp., 155 F. Supp. 2d 436 (E.D. Pa. 2001) ..................................... 16

Santee v. Lehigh Valley Health Network, Inc., No. CIV.A. 13-3774, 2013 WL 6697865
    (E.D. Pa. Dec. 19, 2013) ........................................................................................................ 10

Scott v. Sunoco Logistics Partners, LP, 918 F. Supp. 2d 344 (E.D. Pa. 2013) ........................... 19

Spangler v. City of Phila., 523 F. App'x 142 (3d Cir. 2013) ........................................................ 14

Stewart v. Union Cty. Bd. of Educ., 655 F. App'x 151 (3d Cir. 2016) ....................................... 20

Styer v. Frito-Lay, Inc., No. 1:13-CV-833, 2016 WL 406715 (M.D. Pa. Jan. 11, 2016) ............ 13

Temparali v. Rubin, No. CIV. A. 96-5382, 1997 WL 361019 (E.D. Pa. June 20, 1997) ............. 12

Turner v. City of Phila., No. CV 16-4476, 2017 WL 3129622 (E.D. Pa. July 24, 2017) ............. 13

Walker v. Centocor Ortho Biotech, Inc., 558 F. App'x 216 (3d Cir. 2014) ................................ 19

Warfield v. SEPTA, 460 F. App'x 127 (3d Cir. 2012) ............................................................ 22, 23

Weston v. Pennsylvania, 251 F.3d 420 (3d Cir. 2001) .......................................................... 12, 15

Woodson v. Scott Paper Co., 109 F.3d 913 (3d Cir. 1997) ............................................................ 8

Yarnall v. Phila. Sch. Dist., 57 F. Supp. 3d 410 (E.D. Pa. 2014) ............................................. 9, 19

Young v. City of Phila. Police Dep't, 94 F. Supp. 3d 683 (E.D. Pa. 2015), aff'd,
    651 F. App'x 90 (3d Cir. 2016) ......................................................................................... 12, 16

**Statutes**

42 U.S.C. § 2000e-5(e)(1) .............................................................................................................. 8

43 Pa. Cons. Stat. § 959(h) ........................................................................................................... 8

**Rules**

Fed. R. Civ. P. 56 ...................................................................................................................... 6, 7

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

———————————————————————
                                                    )
**MELISSA CHINERY**,                                )
                                                    )
           Plaintiff,                               )
                                                    )
v.                                                  )          Civil Action No. 16-02697-ER
                                                    )
**AMERICAN AIRLINES**,                              )
                                                    )
           Defendant.                               )
———————————————————————)

**DEFENDANT'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant American Airlines, Inc. ("American Airlines" or "the Company"), by and through its undersigned counsel, hereby files this Memorandum of Law in Support of its Motion for Summary Judgment.  As is demonstrated more fully below, there are no disputed material facts and American Airlines is entitled to summary judgment on Plaintiff Melissa Chinery's ("Chinery") harassment, discrimination, and retaliation claims.

**I.      INTRODUCTION**

Chinery, an American Airlines flight attendant, has brought this sex discrimination and retaliation lawsuit against her employer under federal and state law.  She claims that over a three month period when she was campaigning for elective office in the flight attendants' union, four other flight attendants "harassed" her outside of the workplace by making a handful of private posts to the social media platform Facebook that Chinery found offensive.  Additionally, Chinery asserts that American Airlines discriminated and retaliated against her by meeting with her once to discuss allegations that she had engaged in misconduct (and then clearing her of any wrongdoing) and by conducting random substance abuse and performance tests and checks applicable to all flight attendants.

1

As is demonstrated more fully below, Chinery failed to exhaust her administrate remedies on any of her state law claims or on her state or federal claims for disparate treatment discrimination and retaliation.  Moreover, the conduct about which Chinery complains does not rise to the level of an actionable hostile work environment, discrimination or retaliation. Summary judgment is proper on all of her claims.

## II.  STATEMENT OF UNDISPUTED FACTS

American Airlines employs Chinery as a flight attendant.  (Def.'s Stmt. of Undisputed Facts ("SOF") ¶ 1.)[1]   At all times relevant to this lawsuit, Chinery was based out of the Philadelphia International Airport.[2]  (SOF ¶ 2.)  In 2014, Chinery concluded that the contract the flight attendants' union had negotiated with the Company was unfair, and in November 2014, she ran for president of her union's local office primarily based on her opposition to the contract. (SOF ¶ 4.)  Her election opponent was the incumbent local union president, Kim Kaswinkle, who supported the union contract.  (SOF ¶ 5.)  Kaswinkle won reelection.  (SOF ¶ 6.)

Chinery alleges that four fellow flight attendants harassed her during the election through posts they made to a private Facebook group, Wingnuts.  (SOF ¶ 7.)  Only flight attendants are eligible for membership in Wingnuts.   (SOF ¶ 8.) American Airlines does not sponsor the Facebook group Wingnuts, is not involved in the administration of Wingnuts, and the Company's management-level employees are not eligible to be members of Wingnuts or to moderate the group.  (SOF ¶ 9.)  American Airlines does not require flight attendants to join Facebook or to be members of any particular groups on Facebook.  (SOF ¶ 10.)  Although Chinery was once a member of Wingnuts, she left the group almost immediately after she began

---

[1]     American Airlines has submitted a Statement of Undisputed Facts and accompanying exhibits simultaneously herewith.

[2]     In mid-2016, Chinery voluntarily transferred to Phoenix.  (SOF ¶ 3.)

running for president.  (SOF ¶ 11.)  Once Chinery left Wingnuts, she could not see posts made there.  (SOF ¶ 12.)

### A.   ALLEGED HARASSMENT DURING THE UNION ELECTION CAMPAIGN

Chinery alleges that during her campaign for union office between November 2014 and January 2015, the following individuals authored Facebook posts to Wingnuts that Chinery found harassing.  (SOF ¶ 13.)  Since Chinery was not a member of Wingnuts at the time these posts were made, she saw them only when individuals who were not the authors of the posts took "screen shot" pictures of the posts and showed them to Chinery.  (SOF ¶ 14.)

1. <u>Paul Sears</u>.  Sears was in favor of the union contract, and directed negative comments at men and women who opposed the contract.  (SOF ¶ 15.)  Chinery complains that Sears posted a photograph of a broken record, which she believes was in reference to her.  (SOF ¶ 16.)  Chinery acknowledged that the broken record posting was not based on Chinery's gender. (SOF ¶ 17.)

2. <u>Jim Brown</u>.  Brown was a vocal proponent of the union contract and opposed Chinery's campaign, but Chinery does not allege that Brown made any gender-based comments to or about her during the campaign.  (SOF ¶ 18.)

3. <u>Victor Dunson</u>.  Chinery complains about a post Dunson authored to Wingnuts during the election season, in which he wrote, "this is war.  Brian and Kim [Kaswinkle] are my friends.  If you f**k with my friends you f** with me and I don't like being f**ked with :(." (asterisks in original).  (SOF ¶ 19.)  When asked how this post was gender-based, Chinery speculated that Dunson would not have made a similar post regarding a male candidate opposing Kaswinkle.  (SOF ¶ 20.)

4.      Dan Datzer.[3]  Chinery complains about three Facebook posts Datzer made to Wingnuts during the election.  (SOF ¶ 21.)  In the first, Datzer replied to an individual who posted a comment that he had just voted "'NO' to these clowns" by writing, "it's your cunstitutional right to vote NO."  (SOF ¶ 23.)  In the second, Datzer referenced flashcards, which Chinery took to mock the fact that she used flashcards to study the union contract.  (SOF ¶ 24.)  Finally, Datzer wrote a post in Wingnuts that said, "Told ya I can't cunt to potato."  (SOF ¶ 25.)  Chinery testified that she has "no idea" what this post means, but assumes it was about her campaign and that she was offended by Datzer's language when she learned about the post.  (SOF ¶ 26.)

**B.      CHINERY'S COMPLAINTS OF HARASSMENT**

Chinery complained to American Airlines' Human Resources Department in February 2015 about Facebook posts that she found offensive.  (SOF ¶ 27.)  In addition, Chinery filed an intake questionnaire with the U.S. Equal Employment Opportunity Commission ("EEOC") on August 13, 2015, complaining that she had been harassed on social media.  (SOF ¶ 28.)  There is no evidence that Chinery ever executed an EEOC Form-5 Charge of Discrimination or that she ever filed a complaint of discrimination with the Pennsylvania Human Relations Commission ("PHRC").  (SOF ¶ 29.)  The EEOC's file, obtained through a Freedom of Information Act request, reflects that as of February 1, 2016, the investigator assigned to the matter was still "attempting to gather enough information [from Chinery] to draft formal language that accurately reflects [her] allegations," and as of February 18, 2016, the investigator was still trying to determine the proper respondent for Chinery's charge.  (SOF ¶ 30.)  On February 24, 2016, the EEOC sent American Airlines a "no action required" Notice that Chinery had filed a

---

[3]      Chinery has never met Datzer.  (SOF ¶ 22.)

charge of employment discrimination and on the same day, the EEOC investigator recommended dismissal of Chinery's claim, concluding:

> Because the FaceBook page is in fact a discussion venue for members of the [flight attendants'] union, and is in no way directly affiliated with Respondent, Respondent cannot be held liable for failing to take action against the alleged harassers.  Further, the harassment that [Chinery] is alleging did not take place in her work place and she has not been scheduled to work with any of the alleged harassers, meaning that her allegations do not rise to the level of creating a severe and pervasive work environment.

(SOF ¶ 31.)  On February 29, 2016, the EEOC issued a no probable cause Dismissal and Notice of Rights.  (SOF ¶ 32.)

### C.    CHINERY'S ALLEGATIONS OF RETALIATION

Chinery asserts that American Airlines retaliated against her for engaging in protected activity in three ways.  (SOF ¶ 33.)  First, American Airlines held a single meeting with Chinery on November 9, 2015, that lasted approximately two hours.  (SOF ¶ 34.)  The Company had received multiple anonymous reports that Chinery had gone to one of the Company's vendors and surreptitiously taken a video of the vendor's premises.  (SOF ¶ 35.)  Although Chinery admitted to taking the video, the Company cleared her of wrongdoing, did not discipline her in any way, and no one in management ever brought up the videotape to Chinery again.  (SOF ¶ 36.)

Second, Chinery complains that she was given one or two random drug tests, one random alcohol test, one or two check rides[4] and two compliance checks[5] between February 2015 and March 2017.  (SOF ¶ 37.)  Chinery passed all of her tests and checks, she has no evidence anyone involved in any of them was aware of her protected activity, and she has no basis to

---

[4]      A check ride involves a supervisor observing a flight attendant's performance in flight.  (SOF ¶ 38.)

[5]      A compliance check involves a supervisor verifying that a flight attendant has all of his or her necessary equipment.  (SOF ¶ 39.)

compare the frequency of her tests and checks to those of other flight attendants over the same period of time.  (SOF ¶ 40.)

Finally, Chinery complains that Brown authored a post to his private Facebook page in late October 2015 that offended her.  (SOF ¶ 41.)  After Brown learned that a meeting that had been scheduled with Chinery regarding the vendor videotape had been rescheduled, Brown wrote on his Facebook page, "HOLY SHIT!  I knew it!!  Flipper has NOT had her meeting yet!"[6] (SOF ¶ 42.)  Brown removed the post from Facebook within minutes and because Chinery had blocked Brown on Facebook she could not see the post.  (SOF ¶¶ 45, 46.)  One of Chinery's friends, however, took a "screen shot" picture of the post before Brown deleted it and sent it to Chinery.  Chinery initially thought "flipper" was a reference to the fact that she is from Hawaii, but now believes that "flipper" is a synonym for "whore."  (SOF ¶¶ 47, 48.)

Chinery testified that she is a good flight attendant who loves her job and does it well. (SOF ¶ 49.)

## III.    LEGAL ANALYSIS

Chinery's Second Amended Complaint asserts six counts, alleging that American Airlines discriminated against her on the basis of her gender, subjected her to a sexually hostile work environment, and retaliated against her, all in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pennsylvania Human Relations Act ("PHRA").  However, when reviewing Chinery's claims under the light of Fed. R. Civ. P. 56, it is abundantly clear that there are no material facts in dispute and that American Airlines is entitled to summary judgment on all counts.

---

[6]    Brown learned the meeting had been rescheduled when he overheard one of Chinery's friends talking about it.  (SOF ¶ 43.)  At the time he posted his comment, Brown was unaware that Chinery had complained to Human Resources or the EEOC.  (SOF ¶ 44.)

As an initial matter, Chinery failed to exhaust her administrative remedies under the PHRA because she never filed a complaint of discrimination with the PHRC and, even if her filing with the EEOC could be deemed to satisfy the requirements under the PHRA, it still would have been untimely.  Moreover, Chinery limited the allegations in her EEOC filing to complaints about social media harassment.  Accordingly, she failed to exhaust her administrative remedies with respect to her Title VII or PHRA disparate treatment or retaliation claims.

On the merits, Chinery cannot establish an actionable hostile work environment claim because she does not allege any harassment in her workplace, because she was not subject to any harassment that was intentionally directed at her because of her gender, and because she was not subject to severe or pervasive harassment.  Summary judgment is likewise appropriate on the merits of Chinery's disparate treatment and retaliation claims because she has not suffered any adverse employment action and cannot demonstrate an inference of sex discrimination or a causal connection between any alleged adverse employment action and her protected activity.

## A.    LEGAL STANDARD FOR A MOTION FOR SUMMARY JUDGMENT.

Summary judgment should be granted where there is no material fact in dispute and the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Liberty Mut. Ins. Co. v. Sweeney, 689 F.3d 288, 292 (3d Cir. 2012).  A fact is "material" only if it might affect the outcome of the action and disputes over non-material facts do not preclude a grant of summary judgment.  Med. Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  Although the Court must examine the evidence in the light most favorable to the non-moving party, the non-moving party may not defeat summary judgment by relying "upon bare assertions, conclusory allegations or suspicions," Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985) (quoting Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)), but must instead show through affidavits or admissible evidence

that an issue of material fact remains for trial.  See In re Actiq Sales & Mktg. Practices Litig., 790 F. Supp. 2d 313, 319 (E.D. Pa. 2011) (citing cases).  When the moving party does not bear the burden of proof, summary judgment is warranted by demonstration of an absence of facts to support the non-moving party's case.  See Omnipoint Commc'ns Enters., L.P. v. Newtown Twp., 219 F.3d 240, 242 (3d Cir. 2000) (citing Celotex v. Catrett, 477 U.S. 317, 325 (1986)).

> **B.**   **CHINERY FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES ON HER STATE LAW CLAIMS AND HER STATE AND FEDERAL DISPARATE TREATMENT AND RETALIATION CLAIMS.**

The Court should grant summary judgment in American Airlines' favor on all of Chinery's claims under the PHRA and her PHRA and Title VII disparate treatment and retaliation claims because Chinery failed to exhaust her administrative remedies.

Title VII and the PHRA both have administrative exhaustion requirements.  For Title VII claims in a deferral state such as Pennsylvania, a plaintiff must file a charge of discrimination with the EEOC within 300 days of the alleged discriminatory conduct.  See, e.g., Mandel v. M & Q Packaging Corp., 706 F.3d 157, 165 (3d Cir. 2013) (citing 42 U.S.C. § 2000e-5(e)(1)).  "To bring suit under the PHRA, an administrative complaint must first be filed with the PHRC within 180 days of the alleged act of discrimination."  Id. at 164 (citing 43 Pa. Cons. Stat. § 959(h)); see also Woodson v. Scott Paper Co., 109 F.3d 913, 925 (3d Cir. 1997) (PHRA plaintiff must have first filed an administrative complaint with the PHRC within 180 days of the alleged act of discrimination).  The "[f]iling deadlines imposed by both the PHRA and Title VII are strictly construed."  Fusco v. Bucks Cty., No. CIV.A. 08-2082, 2009 WL 4911938, at *6 (E.D. Pa. Dec. 18, 2009).  Although an EEOC intake questionnaire can be deemed a charge of discrimination for purposes of Title VII timeliness requirements,[7] an intake questionnaire does not constitute a

---

[7]     See Hildebrand v. Allegheny Cty., 757 F.3d 99, 112–113 (3d Cir. 2014).

complaint for purposes of compliance with the PHRA's timeliness requirements.  See Mandel, 706 F.3d at 165 ("The District Court correctly concluded . . . that the mere filing out of an EEOC charge information questionnaire cannot be in itself sufficient to comply with the PHRA." (internal quotation marks omitted)).

Chinery submitted an intake questionnaire to the EEOC on August 13, 2015, but she never executed an actual charge of discrimination that could have been dual filed with the EEOC and the PHRC or otherwise filed a complaint with the PHRC.  The absence of any PHRC complaint of discrimination is fatal to all of Chinery's PHRA claims, and the Court should grant summary judgment on them.

Moreover, even if Chinery is deemed to have dual filed a charge with the PHRC on February 24, 2016, the date the EEOC sent notice of a charge to American Airlines, her state law claims would still be untimely.  The acts Chinery complains constituted a hostile work environment concluded by the end of January 2015, and so she would have had to file a charge with the PHRC by July 30, 2015.  A February 24, 2016 charge of discrimination would have been untimely by almost seven months for purposes of her PHRA claims.  As a result, summary judgment is warranted on all of Chinery's PHRA claims.  See Yarnall v. Phila. Sch. Dist., 57 F. Supp. 3d 410, 429–431 (E.D. Pa. 2014) (granting summary judgment on PHRA claim where plaintiff failed to file complaint with PHRC within 180 days of allegedly discriminatory act); Graudins v. Retro Fitness, LLC, 921 F. Supp. 2d 456, 462–63 (E.D. Pa. 2013) (granting summary judgment on PHRA hostile work environment claim where no act contributing to a

hostile work environment occurred within 180 days before plaintiff filed a complaint with the PHRC).[8]

Additionally, any civil action in the district court is defined by the scope of the plaintiff's EEOC charge of discrimination and the EEOC's investigation that can reasonably be expected to grow out of the administrative charge.  See Mandel, 706 F.3d at 163.  "A reasonable EEOC investigation should include claims not specifically mentioned in the EEOC charge 'where there was a close nexus between the facts supporting the claims raised in the charge and those in the complaint.'"  Flora v. Wyndcroft Sch., No. CIV.A. 12-6455, 2013 WL 664194, at *4 (E.D. Pa. Feb. 25, 2013) (quoting Pourkay v. City of Phila., No. CIV.A. 06-5539, 2009 WL 1795814, at *5 (E.D. Pa. June 23, 2009)).  Claims not included in a charge of discrimination will be deemed within the scope of the earlier charge only where the facts underlying the discrimination complained of in the earlier charge are closely connected to the facts underlying the later-asserted claim, such as when the EEOC charge alleges retaliation and the complaint alleges additional acts of retaliation that occurred while the EEOC investigation was pending.  See Flora, 2013 WL 664194, at *4–5.

In this case, Chinery limited the allegations in her charge to her claim that she had been harassed on social media.  Chinery neither checked the box indicating her intent to file a

---

[8]     The continuing violation doctrine does not save Chinery's untimely PHRA claims.  The only act of alleged harassment that even arguably occurred within the PHRA limitations period (if one credits the February 24, 2016 notice of charge) was Brown's "Flipper" post in late October 2015.  The continuing violation doctrine, however, only applies to acts that are all part of the same unlawful employment practice.  See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002).  Here, Chinery complained that she was harassed around her campaign for union office between November 2014 and January 2015, and Brown's post nine months later having nothing to do with the earlier election cannot be considered part of the same unlawful employment practice.  Moreover, the continuing violation doctrine does not apply to otherwise untimely acts of harassment about which the plaintiff has complained because "allowing the plaintiff to avoid the statutory timely filing requirement by invoking the continuing violations doctrine would be inconsistent with the doctrine's equitable premise that the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights would have been violated."  Santee v. Lehigh Valley Health Network, Inc., No. CIV.A. 13-3774, 2013 WL 6697865, at *7 (E.D. Pa. Dec. 19, 2013) (citation and internal quotation marks omitted).  Here, Chinery complained about the earlier alleged harassment in February 2015.

retaliation claim nor included any information in the narrative she provided to the EEOC suggesting she intended to pursue a disparate treatment or retaliation claim.  Accordingly, Chinery's charge did not encompass any disparate treatment or retaliation claim.  See Mandel, 706 F.3d at 163–64 (affirming dismissal of Title VII and PHRA retaliation claim for failure to exhaust where the plaintiff did not check the retaliation box on her charge of discrimination and did not allege any retaliatory conduct in the charge); Crawford v. Verizon Pa., Inc., 103 F. Supp. 3d 597, 610 (E.D. Pa. 2015) (granting summary judgment on retaliation claim because plaintiff failed to exhaust administrative remedies by failing to check box for retaliation or to describe any alleged retaliation so as to put EEOC on notice of potential retaliation claim); Dalzell v. Astrue, No. 2:05cv755, 2008 WL 598307, at *4 (W.D. Pa. Mar. 3, 2008) (granting summary judgment on retaliation claim because plaintiff failed to exhaust administrative remedies with respect to retaliation claim where plaintiff did not check box for retaliation or describe any alleged retaliation).

Moreover, there is no basis to conclude that the EEOC's investigation into Chinery's complaint of social media harassment would have reasonably been expected to expand into the disparate treatment and retaliation claims she now alleges in this lawsuit.  Chinery's allegations of disparate treatment and retaliation, that she had to attend a meeting in November 2015 and that she underwent random drug and alcohol testing and performance standard checks at unknown times between February 2015 and March 2017, are unrelated to her allegations about social media harassment.  Chinery failed to exhaust all of her PHRA claims as well as her Title VII disparate treatment and retaliation claims, and the Court should grant summary judgment on those claims in American Airlines' favor.

11

### C.    AMERICAN AIRLINES IS ENTITLED TO SUMMARY JUDGMENT ON CHINERY'S HOSTILE WORK ENVIRONMENT CLAIMS.

In Counts III and IV, Chinery purports to assert claims for a hostile work environment. Title VII and the PHRA prohibit sex-based employment discrimination that creates a hostile work environment.  See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993).[9]  To establish a *prima facie* case of hostile work environment, Chinery must establish that: (1) she suffered intentional discrimination because of her sex; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected Chinery; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) there is some basis to impute liability to the employer.  See, e.g., Young v. City of Phila. Police Dep't, 94 F. Supp. 3d 683, 697 (E.D. Pa. 2015), aff'd, 651 F. App'x 90 (3d Cir. 2016).  Summary judgment is appropriate because Chinery cannot establish that she was subject to workplace harassment, intentional discrimination because of her sex, or severe or pervasive harassment.

### 1.    Chinery Does Not Allege Workplace Harassment.

Title VII protects employees from a hostile *work environment*.  See Harris, 510 U.S. at 21 (emphasis added).  Thus, as a threshold matter, a plaintiff must generally demonstrate that the conduct about which she has sued occurred within her work environment.  See Temparali v. Rubin, No. CIV. A. 96-5382, 1997 WL 361019, at *3 (E.D. Pa. June 20, 1997) ("[C]onduct outside the workplace and work hours ordinarily does not create a hostile work environment[.]"); see also Dole v. Town of Bethlehem, No. 1:16-CV-0173 (DJS), 2017 WL 1483451, at *8

---

[9]    Chinery brings each of her claims under both Title VII and the Pennsylvania Human Rights Act ("PHRA"). Courts analyze claims of discrimination, harassment, and retaliation under the PHRA according to the same standards as claims under Title VII.  See Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 104 n.2 (3d Cir. 2009) (sexual harassment and retaliation) ("'The proper analysis under Title VII and the Pennsylvania Human Relations Act is identical, as Pennsylvania courts have construed the protections of the two acts interchangeably.'" (quoting Weston v. Pennsylvania, 251 F.3d 420, 426 n.3 (3d Cir. 2001))); Brzozowski v. Pa. Tpk. Comm'n, 165 F. Supp. 3d 251, 259 (E.D. Pa. 2016) (analyzing Title VII and PHRA discrimination claims under same standard).

(N.D.N.Y. Apr. 25, 2017) ("As a general proposition, employers are not responsible under Title VII for hostile sexual acts resulting from nonwork-related, off-duty interactions between co-employees.")  Here, however, Chinery complains exclusively about private conduct occurring outside of her workplace.

Chinery does not accuse anyone of harassing her in person, or even at work.  Rather, Chinery complains that her coworkers posted comments she found offensive to a private Facebook group to which the coworkers – and not Chinery – belonged.  American Airlines does not require flight attendants to join Facebook, the Company does not administer the private Facebook group Wingnuts, and its management-level employees are ineligible to join or monitor Wingnuts.  As the EEOC investigator concluded, the Facebook group "is in no way affiliated with" American Airlines and the harassment Chinery alleges "did not take place in her work place."  Under these circumstances, neither Wingnuts nor Brown's private Facebook page can be considered part of Chinery's work environment.  See Styer v. Frito-Lay, Inc., No. 1:13-CV-833, 2016 WL 406715, at *13–14 (M.D. Pa. Jan. 11, 2016) (private Facebook message not viewable by the public and not directed at plaintiff did not support a claim of hostile work environment as it was not uttered in the workplace and had no impact on the work environment).  Given the absence of any alleged harassment in Chinery's work environment, Title VII is not implicated and summary judgment in American Airlines' favor is warranted.

## 2. Chinery did Not Suffer Intentional Discrimination Because of her Sex.

In order to establish the first element of a *prima facie* case of hostile work environment, Chinery must present evidence that her alleged harassers intentionally discriminated against her because of her sex.  See Turner v. City of Phila., No. CV 16-4476, 2017 WL 3129622, at *4 (E.D. Pa. July 24, 2017).  Most of the Facebook posts at issue here, including mocking the use of flashcards to study the union contract, a picture of a broken record, and Dunson's reference to

Chinery challenging his friend, the incumbent union president, have no connection to Chinery's gender.  Even the posts that used crude language were motivated by opposition to Chinery's candidacy for union office, not her gender.  This is highlighted by the fact that Chinery's opponent in the election, who the alleged harassers supported, was also a woman.

The only Facebook post that is even arguably connected to Chinery's gender was Brown's reference to Chinery as "Flipper."  Setting aside the fact that there is nothing inherently gender-based or offensive about the word "flipper," Brown's Facebook post was *about* Chinery and not directed *to* Chinery, who had blocked Brown on Facebook and thus could not see his posts.  Thus, there is no evidence that Brown intentionally discriminated against Chinery.  See Davis v. Se. Pa. Transp. Auth., No. CV 13-6864, 2016 WL 97922, at *6 (E.D. Pa. Jan. 8, 2016) (reference to the plaintiff as a "dumb bitch" and alleged harasser's statement that he wanted management to "keep that fucking bitch" away from him, both of which occurred outside of plaintiff's presence, did not constitute intentional discrimination of the plaintiff because of her sex).  Moreover, the mere use of the word "flipper," even if the Court accepts Chinery's questionable assertion that it is a synonym for "whore," does not alone demonstrate discrimination because of Chinery's sex.  See Spangler v. City of Phila., 523 F. App'x 142, 146 (3d Cir. 2013) ("[I]nsults in the workplace[, including calling the plaintiff a 'bitch,'] do not constitute discrimination merely because the words used have sexual content or connotations"); Reyes v. McDonald Pontiac GMC Truck, Inc., 997 F. Supp. 614, 617 (D.N.J. 1998) (fact that the plaintiff was referred to as a "bitch" does not show that she was discriminated against because of her sex).

Finally, although Datzer used profanity in private Facebook posts, Chinery did not have access to them because she was not a member of Wingnuts.  Moreover, although Datzer's choice

of language might have been juvenile and even boorish, he did not call Chinery offensive names or direct offensive language toward her.  Chinery cannot rely on Datzer's private use of profanity to meet the first element of her sexual harassment claim because Chinery cannot show that he would not have used that language but for Chinery's gender, since Chinery was neither on the receiving end nor the subject of his comments.  See Caver v. City of Trenton, 420 F.3d 243, 263 (3d Cir. 2005) (plaintiff cannot satisfy the first element of a hostile work environment claim solely by pointing to comments that were directed at others); Davis v. Solid Waste Servs., Inc., 20 F. Supp. 3d 519, 534 (E.D. Pa. 2014), aff'd, 625 F. App'x 104 (3d Cir. 2015) (plaintiff cannot establish an intentionally hostile work environment claim merely by demonstrating a coworker is prone to profanity).  There is no evidence that anyone intentionally harassed Chinery because of her gender and, accordingly, American Airlines is entitled to summary judgment.

### 3.    The Alleged Harassment Was Not Severe or Pervasive.

Title VII is not a general civility code and it does not protect employees from the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.  See Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).  For a hostile work environment claim to succeed, "the harassment must be so severe or pervasive that it alters the conditions of employment and creates an abusive environment." Weston, 251 F.3d at 426; see also Castleberry v. STI Grp., 863 F.3d 259, 264 (3d Cir. 2017) (clarifying that severity and pervasiveness are alternate possibilities for establishing a hostile work environment).   "Simple teasing, offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."  Faragher, 524 U.S. at 788.  To assess the severity of allegedly harassing conduct, "a court must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct, its severity, whether it is physically threatening or a mere offensive

utterance, and whether it reasonably interferes with an employee's work performance.'" <u>Young</u>, 94 F. Supp. 3d at 698 (quoting <u>Saidu–Kamara v. Parkway Corp.</u>, 155 F. Supp. 2d 436, 439 (E.D. Pa. 2001)).

Chinery presents a case of isolated and minor incidents that fail to rise to the level of severity or pervasiveness required to establish a hostile work environment claim.  In summary, Chinery complains about strongly asserted opinions about the union election, a picture of a broken record, and Datzer's use of profanity, which all occurred between November 2014 and January 2015 in a private Facebook group, and one instance of name calling (Brown's "Flipper" post), which occurred in late 2015 on Brown's private Facebook page.  No one physically threatened Chinery and the alleged harassment did not affect her work performance.  These are, at most, "mere offensive utterances" that are insufficient to create a hostile work environment, "even if they engender offensive feelings in" Chinery.  <u>Greer v. Mondelez Glob., Inc.</u>, 590 F. App'x 170, 173 (3d Cir. 2014).  Even if Chinery's coworkers had directed these comments to Chinery, they would be insufficient to give rise to a hostile work environment claim.  <u>See</u>, <u>e.g.</u>, <u>Cassandra Ballard-Carter v. The Vanguard Group</u>, No. 16-3382, 2017 WL 3411867, at *3 (3d Cir. Aug. 9, 2017) (four comments of the course of three years cannot be considered severe or pervasive); <u>Young</u>, 94 F. Supp. 3d at 699 (granting summary judgment because handful of text messages, one incident of name-calling, and one incident of staring did not establish severe or pervasive discriminatory conduct); <u>Fusco</u>, 2009 WL 4911938, at *9–10  (granting summary judgment because rudeness does not rise to level of severe or pervasive harassment); <u>Clair v. Agusta Aerospace Corp.</u>, 592 F. Supp. 2d 812, 822 (E.D. Pa. 2009) (granting summary judgment because five "stray remarks by co-workers" did not amount to severe or pervasive harassment); <u>Adefumi v. City of Phila. Free Library</u>, No. Civ. A. 01-5565, 2003 WL 21956417, at *9 (E.D.

16

Pa. July 17, 2003) (granting summary judgment because two comments were insufficient to constitute severe or pervasive harassment).

Moreover, Chinery was not a member of Wingnuts and could not see any of the Facebook posts she complains about (and likewise could not see Brown's post to his private Facebook page because she had blocked him) until others took "screen shot" pictures of the posts and showed them to Chinery.  These facts further undercut any contention that Chinery was subjected to severe or pervasive harassment.  See Lamb v. Montgomery Twp., No. CV 15-6759, 2016 WL 7426125, at *10 (E.D. Pa. Dec. 23, 2016) (granting summary judgment on hostile work environment claim because plaintiff failed to demonstrate severe or pervasive conduct where offensive comments were not directed to her); Garner v. Phila. Hous. Auth., No. CV 15-183, 2016 WL 4430639, at *10 (E.D. Pa. Aug. 22, 2016) ("Plaintiff's sexual harassment claims – based almost entirely on comments made to others during conversations in which Plaintiff was not involved – cannot survive summary judgment"); Davis, 20 F. Supp. 3d at 536 (offhand comments not directed at the plaintiff cannot form the basis of a hostile work environment claim); Frazier v. Henry H. Ottens Mfg. Co., No. CIV.A. 11-3987, 2012 WL 1137051, at *6 (E.D. Pa. Apr. 5, 2012) ("[T]he Third Circuit has held that comments merely overheard but not specifically directed at a plaintiff are not severe or pervasive enough to constitute an actionable hostile work environment claim." (citing Caver, 420 F.3d at 263)); Cronin v. Martindale Andres & Co., 159 F. Supp. 2d 1, 6 (E.D. Pa. 2001) (offensive material contained in a company computer not evidence in support of hostile work environment claim because material was not "aimed at the plaintiff or generally displayed to the public" but rather "hidden from view until plaintiff voluntarily exposed herself" to it).

Simply put, Chinery has not demonstrated that her workplace was "permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive' to alter the conditions of [her] employment." <u>Morgan</u>, 536 U.S. at 116 (citations omitted).  While Chinery may have taken offense at her coworkers' private Facebook posts when she learned about them, they do not rise to the level of severe, threatening or humiliating conduct that created an "objective change in the conditions of [Chinery's] employment." <u>Faragher</u>, 524 U.S. at 787. Accordingly, summary judgment should be granted in American Airlines' favor.

### D.   AMERICAN AIRLINES IS ENTITLED TO SUMMARY JUDGMENT ON CHINERY'S DISPARATE TREATMENT AND RETALIATION CLAIMS.

In Counts I, II, V and VI, Chinery asserts claims of disparate treatment sex discrimination and retaliation under Title VII and the PHRA.  On these claims, Chinery bears the initial burden of demonstrating a *prima facie* case.  <u>See</u> <u>Burton v. Teleflex Inc.</u>, 707 F.3d 417, 425–26 (3d Cir. 2013) (citing <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973)).  In order to demonstrate a *prima facie* case of sex discrimination, Chinery must show: (1) she belongs to a protected class; (2) she was qualified for her position; (3) she was subject to an adverse employment action; and (4) members of the opposite sex were treated more favorably or there exist circumstances that raise an inference of discrimination.  <u>Id.</u> at 426.  To state a claim for retaliation, Chinery must show that (1) she engaged in protected activity; (2) she was subject to a materially adverse employment action subsequent to or contemporaneously with such activity; and (3) there was a causal connection between the protected activity and the employer's action. <u>See</u> <u>Moore v. City of Phila.</u>, 461 F.3d 331, 340–41 (3d Cir. 2006).

If Chinery can demonstrate a *prima facie* case of discrimination or retaliation, it would shift the burden to American Airlines to articulate a legitimate, nondiscriminatory explanation for the adverse employment action.  If American Airlines meets its "relatively light" burden of

production in this regard, Chinery's claims can only survive summary judgment if she can produce evidence from which a reasonable inference could be drawn that the proffered explanation for the adverse employment action is merely a pretext for intentional discrimination. Burton, 707 F.3d at 426–27; Moore, 461 F.3d at 341–42.

### 1.    Chinery did Not Suffer an Adverse Employment Action.

Chinery's disparate treatment and retaliation claims fail because she was not subjected to an adverse employment action.  An adverse employment action for purposes of a discrimination claim is an employment action "which is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment."   Scott v. Sunoco Logistics Partners, LP, 918 F. Supp. 2d 344, 352 (E.D. Pa. 2013) (quoting Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001)).  There must be a "'significant change in employment status, such as firing, failing to promote, reassignment with significantly different responsibilities,'" or an act by the employer that "'substantially decreases an employee's earning potential and causes significant disruption in his or her working conditions.'"  Id. at 352 (quoting Durham Life Ins. Co. v. Evans, 166 F.3d 139, 152–53 (3d Cir. 1999)).  In the context of a retaliation claim, a materially adverse employment action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (quotation and citation omitted)).  Minor inconveniences, petty slights and mere annoyances do not rise to the level of materiality required to state a claim for unlawful discrimination or retaliation.  Id.; Yarnall, 57 F. Supp. 3d at 419 ("Title VII does not provide relief for unpleasantness that may be encountered in the work place.") (quoting Walker v. Centocor Ortho Biotech, Inc., 558 F. App'x 216, 219 (3d Cir. 2014)).

None of the incidents about which Chinery complains rise to the level of adverse employment actions.  Random drug tests, which Chinery passed, are not adverse employment

actions.  See Hughes v. Allegheny Cty. Airport Auth., No. CV 15-221, 2017 WL 2880875, at *7 (W.D. Pa. July 6, 2017) (no adverse employment action for purposes of disparate treatment claim based on plaintiff's subjective belief that he was targeted for random drug tests for which he was not disciplined); Lotocky v. Elmira City Sch. Dist., 149 F. Supp. 3d 429, 434 (W.D.N.Y. 2015) ("[A]nnoyances like the administration of a random drug test . . . are not 'materially adverse,'" for purposes of retaliation claim); DeJohn v. Tippmann Grp./Interstate Warehousing, Inc., No. C-1-05-591, 2008 WL 2230194, at *6 (S.D. Ohio May 29, 2008) (random drug test not a materially adverse action for purposes of retaliation claim where plaintiff passed the test and was not subject to disciplinary action).

Likewise, American Airlines' monitoring of Chinery's performance as a flight attendant does not constitute an adverse employment action.  See Stewart v. Union Cty. Bd. of Educ., 655 F. App'x 151, 155 (3d Cir. 2016) (alleged excessive monitoring of employee not an adverse employment action); Ellis v. Pa. Dep't of Corr., Civil No. 1:CV-15-2329, 2017 WL 1928342, at *12 (M.D. Pa. May 10, 2017) (micromanagement and negative criticisms of work did not constitute adverse employment action because they did not result in any change in terms and conditions of employment) (citing cases); Deans v. Kennedy House, Inc., 998 F. Supp. 2d 393, 410–11 (E.D. Pa. 2014) (verbal and written warnings, adjusted work schedule, and docking of pay for one incident of tardiness did not constitute adverse employment actions).

Finally, the fact that American Airlines met with Chinery once to discuss allegations of wrongdoing that had been leveled against her and cleared her of those allegations is not an adverse employment action.  See Jones v. Se. Pa. Transp. Auth., 796 F.3d 323, 327–28 (3d Cir. 2015) (even a paid suspension pending an investigation of an employee's alleged wrongdoing is not an adverse employment action for purposes of a disparate treatment claim); Boykins v.

SEPTA, No. CV 16-985, 2017 WL 1355036, at *9 (E.D. Pa. Apr. 13, 2017) (an investigation without negative consequences is not an adverse employment action for purposes of a retaliation claim); Alers v. City of Phila., 919 F. Supp. 2d 528, 549 (E.D. Pa. 2013) (initiation of work rule investigations that did not lead to discipline did not constitute adverse action for purposes of retaliation claim).

Chinery cannot show that she suffered an adverse employment action and, therefore, fails to establish a *prima facie* case of discrimination or retaliation.  Accordingly, summary judgment should be granted in American Airlines' favor on Chinery's disparate treatment discrimination and retaliation claims.

> ### 2. Chinery Cannot Show Circumstances Giving Rise to an Inference of Discrimination or Demonstrate a Causal Nexus Between Protected Activity and an Adverse Employment Action.

Even if Chinery could show that she suffered an adverse employment action, there is no evidence to demonstrate that the alleged adverse actions took place under circumstances that give rise to an inference of unlawful gender discrimination or that demonstrate a causal connection between Chinery's protected activity and the alleged adverse employment actions.

There is no evidence from which an inference of gender discrimination can be drawn with respect to the alleged adverse employment actions beyond Chinery's speculation that she would have been treated differently if she were a man.  Self-serving, unsupported assertions of discrimination are not sufficient to defeat summary judgment.   See Morrison v. Thomas Jefferson Univ. Hosp., No. CIV.A. 10-4365, 2011 WL 4018252, at *4 (E.D. Pa. Sept. 8, 2011) ("The Court will not infer discrimination simply because a member of a protected class suffered an adverse employment decision."); Morris v. United Steel Workers of Am. Local 4889, No. Civ. A. 08-3398, 2010 WL 933807, at *9 (E.D. Pa. Mar. 16, 2010) (plaintiff failed to establish *prima facie* case of discrimination because "generalized allegations are deficient as a matter of

law" at summary judgment).  Specifically, Chinery has no evidence to suggest that she was subjected to more frequent drug and alcohol or performance testing than similarly situated male flight attendants between February 2015 and March 2017.  Likewise, she has no evidence that a male flight attendant who had been the subject of anonymous complaints of misconduct would not have been brought in for a discussion about the situation (and then, like Chinery, cleared of wrongdoing).   There is simply nothing from which to draw an inference of gender discrimination.[10]

Likewise, there is no evidence to suggest a causal connection between Chinery's protected activity and any of the alleged adverse employment actions.  As an initial matter, the passage of nine months between Chinery's internal complaint to Human Resources and her meeting regarding the videotape and three months between her complaint to the EEOC and the internal meeting are both too long to create an inference of retaliation based on temporal proximity alone.  See Gillyard v. Geithner, 81 F. Supp. 3d 437, 444 (E.D. Pa. 2015) (two months between protected activity and adverse employment action not close to enough to support an inference of retaliation).  Moreover, Chinery has no evidence that any of the individuals involved in the substance abuse or performance testing were aware of her protected activity.   It is axiomatic that an individual cannot intentionally retaliate against an employee for engaging in protected activity about which he or she is unaware.  See Warfield v. SEPTA, 460 F. App'x 127, 132 (3d Cir. 2012) ("Knowledge of an employee's protected conduct is an essential element of establishing a causal connection."); Ambrose v. Twp. of Robinson, 303 F.3d 488, 493–94 (3d Cir. 2002) (summary judgment on retaliation claim where record contained no evidence that individuals who suspended plaintiff were aware of plaintiff's protected activity); Johnson v.

---

[10]     Even if there were an inference of discrimination or retaliation, Chinery cannot rebut American Airlines' legitimate explanation for the actions, namely that it ensures that its flight attendants are not using drugs or alcohol and that it investigates allegations of employee misconduct.

Phila. Hous. Auth., 218 F. Supp. 3d 424, 436–37 (E.D. Pa. 2016) (summary judgment on retaliation claim because no causal connection shown where plaintiff could not show that alleged harasser was aware of plaintiff's protected activity); McCloud v. United Parcel Serv., Inc., 543 F. Supp. 2d 391, 402 (E.D. Pa. 2008) (plaintiff failed to establish causal connection where there was no evidence that individuals who suspended plaintiff's benefits had knowledge of plaintiff's complaint or investigation into the complaint).[11]   There is no connection between Chinery's protected activity and any alleged adverse employment action and summary judgment is proper.

## IV.   CONCLUSION

For the foregoing reasons, American Airlines respectfully requests the Court grant its Motion for Summary Judgment.

Date: August 28, 2017                         Respectfully submitted,

                                              */s/ Daniel E. Farrington*
                                              _____
                                              Daniel E. Farrington (*pro hac vice*)
                                              Sarah K. Biran (*pro hac vice*)
                                              The Farrington Law Firm, LLC
                                              7501 Wisconsin Avenue, Suite 1220W
                                              Bethesda, MD 20814
                                              Tel. (301) 951-1538
                                              Fax (301) 880-5031
                                              dfarrington@farringtonlaw.com
                                              *Counsel for Defendant*

---

[11]   To the extent Chinery asserts a hostile work environment retaliation claim based on Brown's "Flipper" post to his private Facebook page, her claim fails.  To establish a claim for hostile work environment retaliation, Chinery "must prove: (1) she suffered intentional discrimination because of her protected activity; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present."  Fusco, 2009 WL 4911938, at *11 (internal edits omitted).  As an initial matter, Brown was unaware of Chinery's protected activity at the time of his Facebook post and thus could not have authored it in response to the protected activity.  See Warfield, 460 F. App'x at 132 ("Knowledge of an employee's protected conduct is an essential element of establishing a causal connection.").  Moreover, Brown's single, isolated post to his private Facebook page and not directed to Chinery does not come close to severe or pervasive harassment.  See Fusco, 2009 WL 4911938, at *13– 14 (granting summary judgment on retaliatory hostile work environment claim because the plaintiff's allegations, including individuals refusing to speak to the plaintiff, refusing to let her leave work early, multiple reprimands, not allowing the plaintiff into the break room and references to the plaintiff as "missy," were insufficient to rise to the level of severe or pervasive harassment).