IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MELISSA CHINERY                         :
                                        :    CIVIL ACTION
         Plaintiff,                     :    NO. 16-2697
                                        :
    v.                                  :
                                        :
AMERICAN AIRLINES                       :
                                        :
         Defendant.                     :


M E M O R A N D U M


EDUARDO C. ROBRENO, J.                              August 27, 2018

Presently before the Court is the motion for summary judgment filed by Defendant American Airlines. Plaintiff, Melissa Chinery, asserts claims against American for gender discrimination (Counts 1 & II), a sexually hostile work environment (Counts III & IV), and retaliation (Counts V & VI) under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII") and the Pennsylvania Human Relations Act, 43 Pa. Stat. Ann. § 951, et seq. ("PHRA"). For the reasons set forth below, the Court will grant American's motion.

I.  **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Chinery is a flight attendant for American who, during the relevant period of time, was based out of Philadelphia,

Pennsylvania. In November 2014, she ran for the presidency of the flight attendants' union primarily based on her opposition to the union's contract with American. Ultimately she was defeated by the incumbent president, Kim Kaswinkle, who supported the contract. Chinery contends that between November 2014 and January 2015, a "big group" of flight attendants, and four specific male flight attendants, harassed her by posting various comments on Facebook groups concerning flight attendants, including a group called "Wingnuts," and also on Twitter. American does not own, control, or moderate Wingnuts. While Chinery was initially a member of the Wingnuts Facebook group, she left the group shortly after she began to run for office, allegedly due to the harassment. As a result, she became aware of the posts when others provided her with "screen shot" pictures of them.

The four men Chinery accuses of sexual harassment are Paul Sears, Jim Brown, Victor Dunson, and Dan Datzer. The specific instances of alleged discrimination are as follows:

1. <u>Paul Sears</u>: Sears posted a photograph of a broken record, which Chinery believes was about her and was harassing because she had already talked to human resources ("HR") about Sears and she assumed he was supposed to leave her alone. Chinery did not believe the photograph was related to her gender. Sears was in favor of the union contract, and directed

2

negative comments at men and women who opposed the contract. Chinery believes Sears directed more comments to women than men. Chinery did not see Sears at work during the time period at issue.

2. <u>Jim Brown</u>: Brown did not make any gender-based comments about Chinery during the period at issue, but Chinery contends he was part of a pattern of bullying that occurred during the campaign. Brown was also very vocal in his support of the union contract and, according to Chinery, did not care for anyone who voted against the contract. As discussed below, about nine months after this time period, Brown referred to Chinery as "Flipper," which she contends is slang for "whore."

3. <u>Victor Dunson</u>: During the election, Dunson posted on Wingnuts: "this is war. Brian and [incumbent president] Kim [Kaswinkle] are my friends. If you f**k with my friends you f** with me and I don't like being f**ked with :(." (asterisks in original). Chinery felt threatened by this statement and contends that it was gender-related in that she did not believe he would have said that in relation to a male candidate.

4. <u>Dan Datzer</u>: Chinery complains of multiple posts made by Datzer on Wingnuts: (1) in response to a post where someone stated "I just voted 'NO' to these clowns," he posted "it's your cunstitutional [sic] right to vote NO;" (2) Datzer referenced flashcards in a post which Chinery believes was mocking her use

of flashcards to study the union contract; (3) Datzer wrote "Told ya I can't cunt [sic] to potato," which Chinery believes concerned her since it was made in the context of a discussion about her campaign website; (4) in a discussion regarding individuals who were against the union contract, Datzer posted "[h]ave any of them LOOKED in a mirror? Tuck your shirt in fat ass... Fix your hair... How bout [sic] a tie? A little lipstick? Maybe a smile and a HELLO when a passenger steps aboard;" (5) according to testimony, Datzer posted a picture of a "bedazzled vagina;" and (6) Datzer called those opposed to the union contract, "cavalier harpies" and "shrews of misinformation."[1] Chinery has not met Datzer.

Chinery contends that in February 2015, she complained to HR about the Facebook posts she found offensive. However, she asserts that HR did not adequately address her concerns and eventually closed the case after concluding that her allegations were unsubstantiated. Moreover, after discussing the matter with Chinery, a senior specialist in HR told a colleague that Chinery was "exhibiting a whole new side of crazy" and that "[i]f I had hair, it would be pulled out by now." American has a social

---

[1] In her response, Chinery also contends that Datzer posted an image of the Wicked Witch of the West with the caption: "I don't have time for basic bitches." However, the exhibit cited by Chinery does not contain this image and the Court was unable to locate it in the record.

media policy and has disciplined employees for violating it. The four men at issue here were not disciplined by American.

On August 13, 2015, Chinery filed an intake questionnaire with the Equal Employment Opportunity Commission ("EEOC") alleging sexual discrimination based on American failing to address her concerns regarding the online harassment. There is no evidence in the record that Chinery filed an EEOC Form-5 Charge of Discrimination or a complaint with the Pennsylvania Human Relations Commission ("PHRC"). On February 24, 2016, the EEOC sent American a "no action required" notice about the charge of discrimination. On the same day, the EEOC investigator recommended dismissal of Chinery's claim after concluding that American was not responsible for comments made on private Facebook boards, the harassment did not take place in the work setting, and, thus, her allegations did not rise to the level of creating a severe or pervasive work environment.

After Chinery filed her EEOC questionnaire, she alleges that American retaliated against her. Specifically, on November 9, 2015, American held a meeting with her lasting approximately two hours to investigate anonymous reports that Chinery had surreptitiously taken video of one of American's vendors and posted it online. She admitted taking the video but

not posting it. American cleared her of wrongdoing and did not discipline her.[2]

In late October 2015, and after learning that this meeting had been rescheduled, Brown wrote on his private Facebook page, "HOLY SHIT! I knew it!! Flipper has NOT had her meeting yet!" Brown claimed at his deposition that he learned of the rescheduled meeting when he overheard one of Chinery's friends talking about it. He also claimed that he took the post down within minutes of posting it. Chinery did not have access to Brown's Facebook page. Chinery believes that "Flipper" is a synonym for "whore."

Chinery filed her complaint in this Court on June 2, 2016. On January 23, 2017, for pretrial purposes only, the Court

---

[2] Originally, Chinery also contended that American retaliated against her by subjecting her to several random drug and alcohol tests, two "check rides," during which a supervisor observed her work performance, and two "compliance checks" for which a supervisor verified that she had all necessary equipment. However, in her response, she does not dispute American's argument that these actions are not adverse employment actions. Thus, the Court deems these contentions waived. In any event, Chinery does not present evidence that American ignored its standard procedures regarding the frequency of these tests and checks and subjected her to significantly more of them than they otherwise would. As a result, these instances are not actionable adverse employment actions. See Stewart v. Union Cty. Bd. of Educ., 655 Fed. App'x 151, 155 (3d Cir. 2016) (non-precedential) (providing that the alleged excessive monitoring of employee was not an adverse employment action); Butler v. Arctic Glacier USA, 213 F. Supp. 3d 711, 717 n.8 (E.D. Pa. 2016) (noting that while the Third Circuit has not ruled on whether drug testing can be an adverse action, other circuit courts have so found when the testing did not follow the regular and legitimate practices of the employer).

6

consolidated the case with Medlin v. American Airlines, No. 16-5708. American filed its motion for summary judgment on August 28, 2017.

**II.   LEGAL STANDARD**

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The Court views the facts in the light most favorable to the nonmoving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. and N.J., 593 F.3d 265, 268 (3d Cir. 2010). While the moving party bears the initial burden of showing the absence of a genuine issue of material

7

fact, meeting this obligation shifts the burden to the nonmoving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256 (citing Fed. R. Civ. P. 56).

## III. DISCUSSION[3]

### A. Chinery's Claims of Disparate Treatment and Retaliation

In order to establish a prima facie case of gender discrimination premised on disparate treatment, Chinery must show that: (1) she belongs to a protected class; (2) she was qualified for her position; (3) she was subject to an adverse employment action; and (4) members of the opposite sex were treated more favorably or there exist circumstances that raise

---

[3] It is undisputed that Chinery failed to file a complaint with the PHRC. Thus, her PHRA claims are time-barred. Mandel v. M & Q Packaging Corp., 706 F.3d 157, 164-65 (3d Cir. 2013) (agreeing with the district court that "the mere filling out of an EEOC charge information questionnaire cannot be in itself sufficient to comply with the PHRA"). As a result, the Court will discuss only Chinery's Title VII claims. Regardless, Chinery's claims under the PHRA and Title VII utilize the same legal framework, and, thus, their resolutions would be the same. See Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996) (providing that PHRA and Title VII claims are interpreted similarly).

an inference of discrimination. Burton v. Teleflex Inc., 707 F.3d 417, 426 (3d Cir. 2013).

In order to establish a prima facie case of retaliation, Chinery must show that: (1) she engaged in protected activity; (2) she was subject to a materially adverse employment action subsequent to or contemporaneously with such activity; and (3) there was a causal connection between the protected activity and the employer's action. Moore v. City of Phila., 461 F.3d 331, 340-41 (3d Cir. 2006).

Both of these causes of action require Chinery to have suffered an adverse employment action. Chinery has failed to establish this requirement, thus, her claims of disparate treatment and retaliation fail. To meet this prong, Chinery must demonstrate that American took an adverse employment action against her that is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001) (quoting Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997)).

Chinery argues that after she was anonymously accused of violating American policy, she was required to participate in an approximately two hour meeting after which she was cleared of wrongdoing and not disciplined in any way. This event is not serious enough to alter the terms of Chinery's employment, thus,

9

it is not a qualifying adverse action. See, e.g., Jones v. Se. Pa. Transp. Auth., 796 F.3d 323, 326 (3d Cir. 2015) (holding that a paid suspension did not constitute an adverse employment action).

**B.  Chinery's Claim of a Sexually Hostile Work Environment**

In order to establish a prima facie case of hostile work environment under Title VII, a plaintiff must prove that: (1) she suffered intentional discrimination because of her sex; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would detrimentally affect a reasonable person in like circumstances; and (5) the existence of respondeat superior liability. Castleberry v. STI Grp., 863 F.3d 259, 263 (3d Cir. 2017).

While there are a number of serious questions that are raised by Chinery's claims--including whether the alleged harassment over Facebook was due to her sex rather than her opinions regarding the union's collective bargaining agreement with American, and whether the harassment actually occurred in the work environment--it is clear that the alleged instances of harassment were not so objectively severe or pervasive to give rise to a cause of action. As explained by the Supreme Court, for an atmosphere of harassment to be actionable, "the offending behavior 'must be sufficiently severe or pervasive to alter the

10

conditions of the victim's employment and create an abusive working environment.'" Pa. State Police v. Suders, 542 U.S. 129, 146-47 (2004) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)). A court must analyze the alleged harassment by "'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)).

Looking at all of the complained of behavior objectively, even that which does not appear connected to gender and instead appears to be related to Chinery's stance on union issues, the behavior does not amount to severe or pervasive sexual harassment. In summation, Sears posted a photograph of a broken record; Brown referred to her as Flipper; Dunson expressed that he did not like his friends, including the incumbent president of the union, to be "f**ked with;" and Datzer used coarse sexual language, mocked her use of flashcards, ranted about those who did not support the union contract because they did not present a good appearance to passengers, allegedly posted a picture of a bedazzled vagina,

11

and called those who did not support the union contract harpies and shrews.

However, "insults in the workplace do not constitute discrimination 'merely because the words used have sexual content or connotations.'" Spangler v. City of Phila., 523 F. App'x 142, 146 (3d Cir. 2013) (non-precedential) (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998)). It is true that the posts, if directed at Chinery, appear juvenile and unprofessional, particularly when referring to a colleague. Yet, Title VII is not a "general civility code"--it protects against extreme conduct, not against "ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." Faragher, 524 U.S. at 788 (internal quotation marks omitted).

The Court concludes that the complained-of conduct was not so objectively severe or pervasive that it would unreasonably interfere with an employee's work performance. As a result, the Court further concludes that American is entitled to summary judgment on the merits of Chinery's hostile work environment claim.

**IV. CONCLUSION**

For the reasons set forth above, the Court will grant American's motion for summary judgment, entering judgment in its favor and against Chinery.

An appropriate order follows.